United States District Court
Southern District of Texas
**ENTERED**
October 31, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT　　　SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Teresa Krause, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-15-773 |
| | § | |
| Dave Lewis, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1. *Introduction.*

   A game warden was handcuffing a woman. She struggled and kneed a second officer. The game warden threw her to the ground. The game warden is qualifiedly immune. He will prevail.

2. *Background.*

   On June 15, 2014, Teresa Krause went with her husband, Harry, and two teenage children to Lake Bryan, in Brazos County, to celebrate Father's Day. Krause says that, within less than an hour of their arrival, Harry and she had imbibed two or three beers before a friend told them that their minor son was being arrested. They set out with their other son to find him.

   Dave Lewis is a game warden for the Texas Department of Parks and Wildlife. He had arrested Krause's son for public intoxication and had put him, handcuffed, in the back seat of his truck. As the Krauses approached the truck, Lewis stopped them, and both parties got out of their vehicles. Krause went to Lewis's truck, opened the door, checked on her son in handcuffs, then closed the door.

   Krause says that the next thing she saw was Lewis handcuffing her husband while he was in the spread-eagle position. On the cellular phone

recording, they discussed that before Lewis handcuffed her husband, he had approached Lewis to ask what was happening and "got up" in his face. At some point, Lewis threw her husband to the ground.

As recorded in three cellular phone videos, while Lewis used his knee to secure her thrashing husband on the ground, Krause and her son circled the men. Lewis asked Angelica Garza, his ride along, to watch the other members of the family while he attended to the Krauses until additional wardens and police officers could arrive.

What happened after additional police officers arrived is recorded in a video from the dashboard camera of one the officers. Lewis and an officer handcuffed Krause. She struggled when they tried to handcuff the arm in which she was holding her phone. Once the handcuffs were on her wrists, she moved her legs around and kneed the other officer in the groin. Lewis threw her to the ground. A few minutes later, an officer helped her stand and removed the handcuffs.

3. *Qualified Immunity.*

To find that Lewis is protected by qualified immunity on summary judgment, the court must look at the facts in the light most favorable to Krause and decide whether he violated a constitutionally protected right.[1] Summary judgment is appropriate because no genuine dispute of material fact exists. The material facts are captured in 47 collective minutes of video from one dashboard camera and three cellular phone cameras.

4. *Retaliation.*

To prove her retaliation claim, Krause must have shown that (a) she was engaging in constitutionally protected activity, (b) Lewis's actions would have

---

[1] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

objectively chilled that activity, and (c) he acted out of retaliatory intent against her because of that activity.[2]

Krause says that Lewis illegally arrested her and detained her because she was exercising her free-speech and press rights. She says that if she had not criticized him and videotaped her husband's arrest, then she would not have been detained or arrested.

Lewis did not retaliate against Krause's exercising her constitutional rights. After careful review of the four videos, at no point did Lewis ask Krause to stop filming. He asked her to stand farther away while she filmed. She dropped her cellular phone when Lewis and another officer handcuffed her after she had been filming for more than seven minutes and speaking to Lewis for most of that time. The cellular phone then sat on the ground for a few minutes until an officer picked it up and set it on the side of a truck bed while Krause was detained.

5. *Excessive Force.*

Krause has a constitutional right to be free from excessive force. Whether Lewis used excessive force depends on whether he acted objectively reasonably, considering the facts and circumstances.[3] To overcome a qualified immunity claim, Krause must have shown (1) that she had an injury, (2) that the injury was caused only by clearly excessive force, and (3) that the excess was clearly unreasonable.[4]

Krause claims that she had an injury caused by being thrown to the ground – a lacerated spleen. She says that she went to Scott & White Memorial Hospital the day after these events and stayed there for three days. In the dashboard camera video, Krause moves around on the ground, sits up, stands,

---

[2] *See Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

[3] *Graham v. Connor*, 490 U.S. 386, 397 (1989).

[4] *See Graham*, 490 U.S. at 396-97; *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

and walks. Even if Krause had an injury caused solely by being thrown to the ground, she has not proven the other elements.

The force Lewis used was neither clearly excessive nor clearly unreasonable. He and another officer had begun to handcuff Krause, securing one of several people at the scene while waiting for more police officers to arrive. Handcuffing the first wrist went smoothly. When Lewis and the officer tried to handcuff the other wrist, Krause struggled. As soon as the handcuffs were on both wrists, she moved her legs around and kneed the other officer in the groin. In response, Lewis threw her to the ground. A couple minutes later, a different officer helped her sit upright. She remained in handcuffs for approximately five minutes and was released when more officers arrived and her husband was moved into the patrol car.

A reasonable officer could have interpreted these actions as resisting arrest. Even assuming, as Krause claims, that the knee was a reflexive response, not an intentional hit, a reasonable officer could have mistaken it for an intentional hit.

6. *False Arrest.*

A false arrest claim depends on whether an officer had probable cause to arrest someone.[5] Police officers are allowed to take reasonably necessary action to maintain the status quo.[6] Lewis did not violate Krause's constitutional right to be free from unreasonable seizure. On the arrival of a second officer, Lewis handcuffed Krause. More officers arrived and moved her husband into the patrol car. The remaining officers then discussed whether to charge Krause with public intoxication. They decided to let her go. At this point, the son and the husband were in the patrol car, and more officers were present. The scene had calmed. These events took approximately five minutes.

---

[5]*Haggerty v. Texas Southern University*, 391 F.3d 653, 655-56 (5th Cir. 2004); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374 (Tex. 1985).

[6]*See United States v. Hensley*, 469 U.S. 221, 235 (1985); *Allen v. Cisneros*, 815 F.3d 239, 246 (5th Cir. 2016).

7. *Conclusion.*

Game Warden Dave Lewis was considerate, polite, restrained, and responsible. He used reasonable measures to respond to a publicly intoxicated minor son and his publicly intoxicated, struggling father and to detain his mother to stabilize her briefly while the scene, with approximately ten onlookers, calmed. Because he comfortably meets the standards for qualified immunity, Krause will take nothing from Lewis.

Signed on October 31, 2016, at Houston, Texas.

Lynn N. Hughes
United States District Judge